IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EARL MILLOY,                     )
                                 )
            Plaintiff,           )
                                 )
      v.                         )    No.  08 C 7029
                                 )
WBBM-TV, CHICAGO, etc.,          )
                                 )
            Defendant.           )

## MEMORANDUM OPINION AND ORDER

Immediately on the presentment of the Fed. R. Civ. P. ("Rule") 56 motion for summary judgment tendered by CBS Broadcasting, Inc. ("CBS," mistakenly sued in the name of its television station WBBM-TV, which is not a legal entity capable of being sued), this Court inquired of counsel for CBS' ex-employee Earl Milloy ("Milloy") as to any possible defense to that motion. That inquiry was triggered by CBS' submission, in support of its motion, demonstrating that Milloy's Charge of Discrimination before the Illinois Department of Human Rights and EEOC had identified, as an asserted comparator for his claims of race and sex discrimination, only a subordinate CBS employee who did not meet the legal standard of a "similarly situated employee" established by the caselaw.

When Milloy's counsel then responded by adverting to a "Buckhalter" case as assertedly establishing a predicate for successful resistance to a summary disposition, this Court asked counsel to submit citations to that and any other authorities on

which he relied. Milloy's counsel swiftly responded by providing this Court with copies of the opinions in <u>Buckhalter v. Pepsi-Cola Gen. Bottlers, Inc.</u>, 820 F.2d 892 (7th Cir. 1987) and in several other cases that this Court then referred to in its March 12, 2009 memorandum order ("Order"). Although the Order stated that none of those cases spoke to the issue that this Court had posed based on CBS' presentation, so that the submission that Milloy's counsel had made was really nonresponsive to this Court's request, it nonetheless set April 10 as the due date for Milloy's full-scale response to CBS' Rule 56 motion. One day before that due date Milloy's counsel moved for, and on April 14 this Court granted, an extension to April 24 for that response.

Milloy's counsel then tendered what in law was once again a nonresponse. Instead of speaking to the issues that Milloy himself had defined in the charge of discrimination that he had tendered to the Illinois Human Rights Commission ("Commission"), his counsel submitted a Motion for Leave To Take Discovery Pursuant to Fed. R. Civ. P. 56(f)("Motion"). To that end the Motion urged that:

   1. Further discovery is needed to respond to CBS' Rule 56 motion.

   2. Discovery at the administrative level before the Commission is far more limited than is available in this

Court under the Rules.[1]

This opinion will turn to that subject later. But first the noncurable defect in Milloy's case as it now stands--the subject of CBS' Rule 56 motion--should be addressed.

In that respect, one essential element of the prima facie case that an employment discrimination plaintiff must proffer (absent direct evidence of prohibited discrimination, which is unquestionably absent here) is a showing[2] that the employee who suffered an adverse employment action was the victim of less favorable treatment than had been extended to at least one similarly situated employee who was not a member of the statutorily-protected class to which plaintiff belongs (among the host of cases so holding, see, e.g., <u>Barricks v. Eli Lilly & Co.</u>, 481 F.3d 556, 559 (7th Cir. 2007)). And as this Court's original inquiry of Milloy's counsel had suggested, based on CBS'

---

[1] Motion ¶20 mischaracterizes this Court, in a locution that also appears in Motion ¶10, in this fashion:

> The other aspect of this matter that seems to be bothering the court is the fact that IHRC below granted Summary Judgment.

Milloy's counsel must have read a different Order from the one this Court issued. That assertion again seeks to call into play the <u>Buckhalter</u> case, which Order at 2 disavowed as posing an entirely different issue from the one now before this Court.

[2] "Showing" in the summary judgment context requires not actual proof, but rather only the identification of a genuine issue of material (that is, outcome-determinative) fact, as to some element of a plaintiff's case.

3

presentation in its Rule 56 motion, Milloy has flat-out flunked that requirement.

Attached to this opinion are pages 1-6 of CBS' Memorandum in support of its motion, which fairly reflect the factual framework on which Milloy must have mounted his claim to be successful. Briefly, Milloy has cited only Bonnie Bloom ("Bloom") as an asserted comparator. But Bloom was concededly not only Milloy's subordinate, not his peer, but also a union member subject to the protective provisions of a collective bargaining agreement when it comes to discipline (as Milloy was not). Those differences in status have consistently been held to negate the "similarly situated" test applicable to the essential fourth element of a prima facie case--as to managerial vs. non-managerial employees, see, e.g., Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1042 (7th Cir. 1993), and as to union vs. non-union members, see, e.g., Johnson v. Pepsi Cola Gen. Bottlers, Inc., No. 04 C 325, 2005 WL 1629895, at *7 (E.D. Wis. July 6), relying on Judge Harry Leinenweber's opinion in Sutherland v. Norfolk S. Ry., No. 01 C 2337, 2002 WL 1827630, at *4 (N.D. Ill. Aug. 9).

Nothing daunted by that uncontroverted--and incontrovertible--fatal flaw in Milloy's claim as tendered to the Commission and then to this Court, his counsel shifted ground (as stated earlier) by moving under the purported auspices of Rule 56(f) for leave to engage in further discovery. But discovery

into what? Into an attempted new claim of hostile work environment that not only was absent from his Complaint here but, equally important, had not been the subject of his Charge of Discrimination before the Commission.

That would flout the principle exemplified by <u>Cheek v. W. & S. Life Ins. Co.</u>, 31 F.3d 497, 500 (7th Cir. 1994)(numerous citations omitted):

> As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge. This rule serves the dual purpose of affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion, and of giving the employee some warning of the conduct about which the employee is aggrieved. Although the rule is not jurisdictional, it is a condition precedent with which Title VII plaintiffs must comply. For allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would frustrate the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge.[3]

<u>Cheek</u>, <u>id</u>. then expanded on the limited "leeway" given to that "general rule" by quoting the en banc opinion in <u>Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.</u>, 538 F.2d 164, 167 (7th Cir. 1976) that allows a complaint to advance claims that are "like or reasonably related to the allegations of the charge and growing

---

[3] [Footnote by this Court] Indeed, Milloy's Motion ¶12 itself acknowledges:

> As courts have held, a plaintiff under Title VII cannot bring claims in a lawsuit that were not included [in] an EEOC charge.

5

out of such allegations." And to flesh out the scope of that "leeway," Cheek, id. at 501 (emphasis in original) explained:

> Because an employer may discriminate on the basis of sex in numerous ways, a claim of sex discrimination in an EEOC charge and a claim of sex discrimination in a complaint are not alike or reasonably related just because they both assert forms of sex discrimination. The claims are not alike or reasonably related unless there is a factual relationship between them. This means that the EEOC charge and the complaint must, at minimum, describe the <u>same conduct</u> and implicate the <u>same individuals</u>.

Although Cheek thus addressed discrimination on the basis of sex, its principles of course extend to all types of employment discrimination prohibited by law.

Milloy's counsel surprisingly seeks to call the year-later opinion in Harper v. Godfrey Co., 45 F.3d 143 (7th Cir. 1995) to his aid--surprisingly because Harper, id. at 147-48 expressly reconfirmed those same principles. For that purpose it cited both Jenkins and Cheek (the latter at several places), and it actually quoted from the latter opinion the same emphasized language that this opinion has just quoted in the preceding paragraph. In fact, Harper applied those principles by <u>rejecting</u> the added claim sought to be advanced by the plaintiff there, just as this Court now rejects Milloy's effort to metamorphose his claim here into a new and different shape.

Hence Milloy's Rule 56(f) motion is denied out of hand. And as for his claim of discrimination in the form presented both administratively and before this Court, Milloy has not identified

6

the existence of any genuine material fact that, even with the benefit of the reasonable favorable inferences to which a summary judgment opponent is entitled, satisfy one of the required elements of a prima facie case of employment discrimination. And that failure entitles CBS to a judgment as a matter of law under familiar Rule 56 standards (Burks v. Wis. Dep't of Transp., 464 F.3d 744, 751 (7th Cir. 2006)). This action is dismissed with prejudice.

_____
Milton I. Shadur
Senior United States District Judge

Date: May 14, 2009

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EARL MILLOY, )
 )
          Plaintiff, )
 )
     v. ) No. 08 CV 7029
 )
WBBM-TV, CHICAGO, a wholly owned ) The Honorable Milton I. Shadur
subsidiary of CBS BROADCASTING INC., a ) Magistrate Judge Schenkier
Delaware corporation, )
 )
          Defendant. )

RECEIVED
MAR 10 2009
MILTON I. SHADUR
SENIOR U.S. DISTRICT JUDGE

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS INITIAL MOTION FOR SUMMARY JUDGMENT

CBS Broadcasting Inc. ("CBS"), erroneously sued herein as WBBM-TV, CHICAGO, a wholly owned subsidiary of CBS BROADCASTING INC.,[1] by and through its attorneys, Williams Montgomery & John Ltd., respectfully submits this Memorandum of Law in Support of its Initial Motion for Summary Judgment.

## INTRODUCTION

Plaintiff Earl Milloy ("Milloy"), an African-American male, filed this action against CBS for race and sex discrimination, after these identical claims were dismissed by the Illinois Human Rights Commission ("IHRC"). Milloy's claims also should be dismissed by this Court because he cannot state the required *prima facie* case of discrimination. The parties engaged in extensive discovery in prior proceedings before the Illinois Department of Human Rights and the IHRC. In those proceedings, Milloy identified only one alleged "comparable," a Caucasian female

---

[1] WBBM-TV is not a wholly-owned subsidiary of CBS. Rather, it is a television station owned and operated by CBS, and is not a legal entity capable of being sued.

technician named Bonnie Bloom. Bloom is the same, and only, person Milloy has alleged in this case as being similarly-situated to him. However, in his responses to CBS' requests to admit before the IHRC, Milloy admitted that Bloom was, in fact, not at all similarly-situated to him, and was actually his subordinate in a union – a position very much unlike Milloy's management position. This admission is fatal to plaintiff's claims. As demonstrated below, there is a legion of legal authority that holds that a subordinate in a union is not similarly-situated to a non-union manager, which is the very comparison Milloy attempts to make here. Without being able to show that a similarly-situated employee was treated differently than he was, Milloy cannot establish a *prima facie* case of discrimination as a matter of law Accordingly, on this basis alone, the Court should grant summary judgment in favor of CBS.[2]

## FACTUAL BACKGROUND

Although this case is newly filed before this Court, the parties engaged in extensive discovery in the prior proceedings before the Illinois Department of Human Rights and the IHRC. From that process, the following facts have been established:

Milloy initially commenced employment at WBBM-TV as a freelance editor. On June 23, 2003, Carol Fowler (Caucasian female), Vice President/News Director, made the decision to hire Milloy as the full-time Recorded Media Manager at WBBM-TV. The position for Recorded Media Manager was newly created.[3]

In his role as Recorded Media Manager, Milloy reported directly to Steve Mills, News Operations Manager, and Fowler. Milloy was responsible for supervising and managing the staff

---

[2] In this initial motion, CBS is moving for summary judgment based solely on plaintiff's failure to establish a *prima facie* case of discrimination, since he cannot establish that a similarly-situated employee was treated differently than him. CBS reserves the right to move for summary judgment at a later time on any and all additional grounds available to it.

[3] *See* Rule 56.1(a)(3) Statement of Facts, Affidavit of Carol Fowler ¶ 3, Rule 56.1(a)(3) Statement of Material Facts, Exhibit A; Affidavit of Steve Mills ¶ 3, Rule 56.1(a)(3) Statement of Material Facts, Exhibit B; *See*

and freelance editors who edited video tapes for the WBBM-TV news department. He was also chiefly responsible for coordinating the assignments in the news editing area. Milloy supervised several employees during his tenure, one of whom was Bonnie Bloom.[4]

During the course of his employment at CBS, Milloy was the subject of numerous complaints from subordinates and co-workers regarding his intimidating and unprofessional attitude in the workplace. These incidents can be summarized as follows:

- In August 2003, as part of another investigation, CBS received a complaint from Milloy's subordinate, Bloom, that Milloy was verbally harassing her. A separate investigation was launched and Milloy was interviewed and acknowledged that he could be perceived as threatening. CBS counseled Milloy to communicate with his colleagues in a calm and respectful way. Rule 56.1(a)(3) Statement of Material Facts Nos. 8, 9 and 10; Fowler Affidavit ¶ 7.

- In September 2003, another Milloy subordinate, Jan Hendrickson, complained regarding Milloy's tone of voice and his interactions with her. Milloy was again counseled. *Id.* ¶ 8.

- In October 2003, Milloy's co-worker, Dan Kraemer, complained about two incidents where Milloy screamed at him. *Id.* ¶ 9. Milloy was again counseled and gave assurances that his conduct would improve. *Id.* ¶ 9.

- Also in October 2003, Bloom again complained that she was bothered by Milloy's "offensive jokes." Bloom also filed a claim with the Equal Employment Opportunity Commission ("EEOC"), alleging a hostile work environment due to Milloy. *Id.* ¶ 10. Although CBS and the EEOC concluded the hostile work environment claim was unsubstantiated, Milloy

---

Milloy's offer letter from Carol Fowler, dated June 18, 2003, and e-mail to All Station Employees, Rule 56.1(a)(3) Statement of Material Facts, Exhibit C.
[4] *See* Fowler Aff. ¶¶ 4-5; Mills Aff. ¶ 6.

3

nevertheless was again counseled on his interactions with others and the need to be professional. *Id.* ¶¶ 10-11.

- In January 2004, CBS sent Milloy to St. Petersburg, Florida for a management training program called Leadership for TV & Radio News Managers: Strategies for Success, which was designed to provide managers with guidance on leadership style and team building. *Id.* ¶ 12. Milloy attended the training.

- In October 2004, Steve Stribling complained that Milloy had made a derogatory statement regarding Hendrickson's weight as Milloy passed Hendrickson in the hall; words to the affect that Hendrickson was "too wide." *Id.* ¶ 13. Hendrickson also complained separately about the same incident. She stated that Milloy veered towards her in the hallway and bumped into her. Milloy then stated that it was difficult to get around her, as she was "too wide." *Id.* ¶ 13. Hendrickson reported that she felt physically threatened and that she was afraid of Milloy. *Id.* ¶ 13. Milloy was informed that an investigation would ensue and he was specifically directed not to discuss the incident with any employee. *Id.* ¶ 14. The subsequent investigation confirmed the exchange with Hendrickson, as reported by Hendrickson, Stribling and an anonymous employee. *Id.* ¶ 15. More significantly, the investigation also revealed that despite clear warnings not to discuss the incident with any other employees, Milloy admitted to confronting Stribling about his description of the incident. *Id.* ¶16.

Milloy's employment was then terminated for the following reasons: (1) the results of the internal investigation, particularly the determination that Milloy bumped into Hendrickson while directing a derogatory comment at her; (2) the fact that Milloy failed to follow Fowler's

directive not to discuss the incident; and (3) the other complaints by employees at the Station about Milloy's threatening behavior, which caused tension in the workplace.[5]

Milloy then filed his charge of discrimination with the Illinois Department of Human Rights, which investigated his claims and issued a "lack of substantial evidence" dismissal. Milloy filed a request for Review, and the Chief Legal Counsel for the Human Rights Commission issued a finding of substantial evidence that Milloy was treated differently. The Complaint reasserted the race and sex allegations from Milloy's previously filed March 1, 2005 Charge of Discrimination, which the IDHR dismissed, and again alleged that his race (African-American) and sex (male) played a role in his termination, in that CBS did not discharge a similarly-situated non-black and non-female technician, Bloom, under similar circumstances.[6] After further investigation, including a lengthy discovery process, the Illinois Human Rights Commission granted CBS' motion for summary disposition, finding that Milloy could not state a *prima facie* case of discrimination. During the discovery process before the Human Rights Commission, Milloy answered interrogatories and requests to admit, which contained the following admissions:

- Milloy was a manager at WBBM-TV. Rule 56.1(a)(3) Statement of Material Facts No. 28; Milloy's Response to Respondent's Request to Admit or Deny, Nos. 1 and 3, Rule 56.1(a)(3) Statement of Material Facts, Exhibit E.

---

[5] *See* Fowler Aff. ¶ 19; Mills Aff. ¶¶ 10-12; *see also* January 27, 2005 letter from Diane Murphy to Milloy, Rule 56.1(a)(3) Statement of Material Facts, Exhibit D.
[6] Rule 56.1(a)(3) Statement of Material Facts, Ex. G.

5

- Bonnie Bloom and Jan Hendrickson were editors who worked under Milloy's direct supervision, and neither was a managerial employee. Rule 56.1(a)(3) Statement of Material Facts No. 29; Responses to Req. Nos. 5, 6 and 7.

- Bloom and Hendrickson were members of a collective bargaining unit represented by the International Brotherhood of Electrical Workers and covered by a collective bargaining agreement. Rule 56.1(a)(3) Statement of Material Facts No. 30; Responses to Req. No. 8.

When asked in an interrogatory to identify individuals who can "substantiate your allegations in the Request for Review that you were similarly situated to Bonnie Bloom," Milloy answered that he "must misunderstand something here – she was complainant's [Milloy's] subordinate." Rule 56.1(a)(3) Statement of Material Facts No. 31; Response to Interrogatory No. 14, Rule 56.1(a)(3) Statement of Material Facts, Exhibit F.

## ARGUMENT

### A. The Summary Judgment Standard

The standard for summary judgment is well established. Summary judgment is appropriate where the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56. Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986).

To state a *prima facie* case of discrimination, Milloy must show that: 1) he is a member of a protected class; 2) he met his employer's legitimate expectations; 3) he suffered an adverse

6